UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 3:11-cr-172-1(VLB) |
| | : | |
| **RALSTON WILLIAMS** | : | |
| Defendant. | : | November 20, 2020 |
| | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION DENYING DEFENDANT RALSTON WILLIAMS'S MOTION FOR A REDUCTION OF SENTENCE, [Dkt. 410]

Before the Court is Defendant Ralston Williams's motion for a reduction of his sentence to provide for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Dkt. 410]. Defendant first filed a *pro se* motion seeking modification of his sentence from incarceration to home confinement based on his asserted risk of severe complications should he contract COVID-19 while incarcerated at CI D. Ray James. [*Id.*]. Appointed counsel filed a supplemental brief that addresses Mr. Williams's subsequent coronavirus diagnosis, accompanied by additional medical records. [Dkt. 431]. The Government opposes Defendant's motion [Dkts. 412 and 437]. For reasons set forth below, the Court DENIES Defendant's motion.

### Background

In May 2012, a jury convicted Mr. Williams of each count charged in a three-count indictment for (1) conspiracy to distribute and to possess with intent to distribute heroin in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), (b)(1)(C); (2)

1

possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) possession with intent to distribute cocaine base / crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). [Dkt. 13 (Indictment)]; [Dkt. 174 (Jury Verdict Form)].

After his conviction, Mr. Williams was informed that the Probation Office would be conducting a pre-sentence investigation and preparing a report. Mr. Williams was interviewed in the presence of his counsel, read the report, and did not object to any facts as presented in the report. [Dkt. 315 (Sentencing Tr.) at 12:20-13:05]. Based on testimony at trial and a *Fatico* hearing, the Court adopted the pre-sentence investigation report as its finding of facts. [*Id.* at 14:09-15:18].

The Court adopted the PSR's finding, over Defendant's objection, that a "conservative estimate of the heroin attributable to the conspiracy over the course of its several month duration is greater than one kilogram of heroin, but less than 3 kilograms." [Dkt. 241 (Final Pre-Sentence Investigation Report) ¶ 16-17]. Additionally, there was amble evidence to show that Mr. Williams directed the actions of his co-conspirators and personally profited from their trafficking activities on his behalf. [PSR ¶ 25]; [Dkt. 315 at 13:16-14:08].

The PSR recounted the DEA investigation into the overdose death of a 25-year-old woman who purchased heroin supplied by Mr. Williams to his co-conspirator with Mr. Williams's knowledge. [PSR ¶¶ 6-15]. Mr. Williams, who has no history of substance abuse or addiction, continue to deal drugs after he became aware of the woman's overdose death. [PSR ¶ 13]; [PSR ¶ 49] ("The defendant reported that he has not used or abused illegal narcotics or controlled substances,

and has never received treatment for such issues."). Beyond the sheer quantity of drugs trafficked, Mr. Williams's conduct was exploitative and pernicious. [Dkt. 315 at 35:03-36:05].

Mr. Williams has several prior state convictions and was previously incarcerated for 39 months. [PSR ¶¶ 32-39]. Mr. Williams was serving a term of a conditional discharge at the time he committed the instant offense. [PSR ¶ 38].

After considering the applicable advisory guideline range, the Court sentenced Mr. Williams to 168 months' imprisonment; three years' supervised release; a fine of $100,000 to be paid if he is deported and illegally reenters; and a $300 special assessment. [Dkt. 315. at 38:11-40:9]. The Second Circuit affirmed the amended judgment in a summary order in June 2014. [Dkt. 344].

On July 27, 2015, the Court reduced Mr. Williams's sentence from 168 months to 152 months pursuant to 18 U.S.C. § 3582(c)(2) and in light of the United States Sentencing Guideline amendment to the drug quantity table, which reduced by two levels the base level offense for drug convictions. [Dkt. 379]. The Court explained that "based on the perniciousness, dangerousness, and egregiousness of Defendant's underlying criminal conduct and his lack of sincere remorse at sentencing, the sentence imposed was necessary to foster respect for the law, protect the public, and deter Defendant from further criminal conduct, without creating an unwarranted sentencing disparity." [Dkt. 388]. Mr. Williams appealed this 16-month reduction and the Second Circuit issued a summary order on March

9, 2017 affirming the Court's modification of the judgment to the extent previously granted. [Dkt. 391].

On August 10, 2020, Mr. Williams filed a *pro se* motion for compassionate release, accompanied by, *inter alia*, medical records and a copy of a July 16, 2020 letter from the facility administrator of the D. Ray James Correctional Facility denying Mr. Williams's request that the Director of the Federal Bureau of Prisons ("BOP") move for compassionate release on his behalf. [Dkt. 410]. Mr. Williams argues that he is susceptible to severe illness should he contract the virus because he is immunocompromised because of his medical conditions, namely an issue with his appendix, a hernia, and diverticulitis. [Dkt. 410 at 2 (Def.'s *pro se* mem. in supp.)]. Mr. Williams argues that a detainer lodged by U.S. Immigrations and Customs Enforcement ("ICE") does not preclude him from compassionate release. [*Id.* at 8-9]. Mr. Williams argues that a sentence of time served would accomplish the statutory goals of sentencing and permit him to access appropriate medical care outside of a correctional institution. [*Id.* at 9-11]. Mr. Williams argues that he is rehabilitated and proposes that, if he were released, he would reside and work in a family business. [*Id.*].

In opposition, the Government argues that Mr. Williams fails to demonstrate "extraordinary and compelling" reasons to modify his sentence because his medical conditions are not recognized by the CDC as heightening his susceptibility to severe illness should he contract the virus and the presence of the virus in the correctional setting itself does not constitute "extraordinary and compelling" reasons for release. [Dkt. 412 at 8-10](citing *United States v. Raia,* 954 F.3d 594, 597

(3d Cir. 2020)("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). The Government argued that the § 3553(a) factors addressed by the Court as sentencing militated against modifying his sentence again. [*Id.* at 11]. The Government also expressed concerns with the suitability of his release plan, if he were not deported to the United Kingdom. [*Id.*].

Pursuant to the District's General Order, defense counsel was reappointed to represent Mr. Williams with respect to the instant motion. Thereafter, defense counsel filed a supplemental memorandum of support [Dkt. 431], accompanied by updated medical records [Dkt. 433], a release plan [Dkt. 434], and additional BOP administrative and programmatic records [Dkt. 431-1].

Mr. Williams tested positive for COVID-19 on August 22, 2020. [Dkt. 431 (Def. Suppl. Mem.) at 2]. The medical records show that he tested negative for coronavirus on August 27, 2020 and again on September 2, 2020. [Dkt. 433 at 4-5]. A radiologist's report interpreting a chest x-ray taken on September 3rd states that "The left hemidiaphragm is elevated. At this time no abnormal airspace opacification or effusion is evident. The heart size and contour and visualized bony structures are unremarkable." [*Id.* at 1]. His blood oxygen level was 96% on August 28th and 98% on September 2nd and he did not have a fever on either date. [*Id.* at 10, 9, respectively]. His medical conditions list confirms that he has diverticulitis, has had an appendectomy, and underwent hernia repair surgery while in custody.

5

*See* [*Id.* at 19 (BOP Patient Problem List, 01/21/2020)]. The PSR states that he does not have any serious or chronic health conditions. [PSR ¶ 48].

In the supplemental motion, Defendant argues that "extraordinary and compelling" reasons exist to modify Mr. Williams's sentence because "Individuals recovering from COVID-19 may struggle with a number of respiratory, cardiac and kidney problems." [Dkt. 431 at 5]. Defendant argues that "Mr. Williams's incarceration has led to his contraction of COVID-19. This has made his incarceration substantially more difficult than it otherwise would have been." [*Id.* at 6]. Defendant further argues that he is at risk of contracting COVID-19 again because it is unclear how long he will be protected by antibodies. [*Id.*]. Defendant argues that the § 3553(a) factors militate in favor of releasing Mr. Williams to home confinement because "[t]he purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." [*Id.* at 9]. He argues that his conditions of confinement have been harsh as a result of contagion mitigation efforts, including quarantines, social distancing protocol, and service disruptions. [*Id.* at 10-11]. Finally, Defendant argues that his exemplary prison record "…suggests that additional time incarcerated is not necessary to achieve deterrence, protect the public, or promote respect for the law." [*Id.* at 11].

The Court granted the Government's motion for leave to file a response addressing the supplemental medical records. [Dkt. 436]. The Government argues that "Mr. Williams does not allege, nor do the medical records indicate, that he continues to suffer from the effects of COVID-19 some seven weeks later. Mr. Williams states generally (and the Government agrees) that individuals recovering

6

from COVID-19 may face an uphill battle, especially in the prison setting. However, Mr. Williams does not allege that he personally continues to have symptoms associated with the virus." [Dkt. 437 at 4]. The Government argues that Mr. Williams has not established that he needs convalescence from the virus and not enough information is known about the likelihood of re-infection. [*Id.*]. The Government also argues Mr. Williams's motion does not address the fact that he is facing deportation to the United Kingdom and its impact on his release plans. [*Id.* at 4-6]. The Government avers that, according to ICE, "…immigration court for detained individuals has generally resumed normal operations with a two to four-week delay behind pre-pandemic times." [*Id.* at 5]. Removal proceedings in Mr. Williams's case have not yet commenced because he is not scheduled for release until 2023.

A review of the Bureau of Prison's ("BOP") Inmate Locator confirms that Mr. Williams is designated to D. James Ray CI, a BOP contracted correctional institution in Georgia. *See Inmate Locator Service, BOP Registration no. 20605-014*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/, (Nov. 19, 2020); *see Vera v. United States*, No. 3:11-CV-00864-VAB, 2017 WL 3081666, at *3, n. 2 (D. Conn. July 19, 2017) (taking judicial notice of the inmate locator search); *CI D. Ray James*, Fed. Bureau of Prisons, https://www.bop.gov/locations/ci/drj/ (last visited Nov. 19, 2020). According to the BOP's Inmate Locator Service, his current release date is February 14, 2023. *Id.*

## Legal Standard

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Addressing the specific provision under which Defendant seeks relief from his sentence, the First Step Act of 2018 amended the procedural requirements for bringing a motion for resentencing to provide compassionate release. First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *2-4 (2d Cir. Sept. 25, 2020). The First Step Act amendments were intended to address past inaction by the BOP by

removing the BOP as the sole arbiter of compassionate release, while still permitting the BOP to weigh-in on a defendant's request via the statute's exhaustion of administrative remedies requirement. See *id*. at 4; *see also United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338, at *3 (D. Conn. Apr. 23, 2020)(explaining the policy purpose behind the exhaustion requirement in this context).

Recently, in *Brooker*, 2020 WL 5739712, the Second Circuit held that since the BOP no longer has exclusive authority to bring a motion for compassionate release, district courts have the discretion to determine what constitutes "extraordinary and compelling" circumstances outside of the outdated U.S. Sentencing Commission policy statements when the defendant moves for compassionate release. In short, the statute only requires courts to consider "applicable" statements issued by the U.S. Sentencing Commission and the relevant policy statement, U.S.S.G. § 1B1.13, is no longer "applicable" because the policy statement refers exclusively to a motion brought by the Director of the BOP. *Id*. at 13-16. In other words, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release." *Id*. at 16. Therefore, courts may consider "…the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and not just those delineated by the U.S. Sentencing Commission's policy statement. *Id*. at 18.

Consequently, the Court may grant a Defendant's motion for compassionate release if: (1) the Defendant has fully exhausted his administrative remedies or 30

9

days have passed from receipt of his request by the Warden, and (2) the Court finds that, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

As to what constitutes "extraordinary and compelling" circumstances, this Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. *See, e.g. United States v. Jepsen*, 451 F. Supp. 3d 242, 245-47 (D. Conn. 2020) (granting motion for compassionate release where defendant suffers from a compromised immune system and defendant had less than eight weeks remaining on sentence); *United States v. Miller*, No. 3:15-CR-132-2 (VLB), 2020 WL 3187348, at *5 (D. Conn. June 15, 2020)(granting motion for compassionate release for severely ill defendant with less than three months remaining on sentence).

Courts considering defendants' medical vulnerability from COVID-19 ordinarily look to the CDC's guidance on at-risk health populations. *See United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539, at *4-5 (D. Conn. June 15, 2020); *see also, e.g., United States v. Adams*, No. 3:16-CR-86-VLB, 2020 WL 3026458, at *2 (D. Conn. June 4, 2020); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020). In determining whether a defendant's medical vulnerability to the virus constitutes "extraordinary and compelling" reasons for re-sentencing, courts have considered a multitude of factors in factually intensive inquiries, including: defendants' age, the severity and

documented history of their health conditions, defendants' history of managing those conditions in prison, the proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served. *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)(citations omitted).

A motion for compassionate release is not an appropriate safety valve to ameliorate the immediate risk to inmates' health and safety posed by the pandemic. Congress empowered the BOP with the ability to expand the use of home confinement pursuant to 18 U.S.C. § 3624(c)(2). CARES Act, Pub. L. No. 116-136 (2020). The BOP is also empowered to grant temporary furloughs. 18 U.S.C. § 3622. In contrast, if granted by the sentencing court, a motion for compassionate release results in a new judgment, with a now-reduced stated term of incarceration. *See, e.g. Jepsen,* 3:19-cr-00073-VLB-1, Dkt. 42 (amended criminal judgment following order granting unopposed motion for compassionate release).

The defendant bears the burden of showing that he is entitled to a sentence reduction. *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020)).

## Discussion

I. **Exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a defendant must either "…fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf <u>or</u> the lapse of 30 days from the receipt of such a

11

request by the warden of the defendant's facility, whichever is earlier." (underlining added). The parties and the Court agree that the administrative exhaustion requirement is satisfied in this case as thirty days passed between Mr. Williams's submission of his request to the warden and his filing of the instant motion. [Dkt. 431-1(Williams Inmate Request, 06/22/2020) at 1]; see [Dkt. 412 (Gov. Mem. in Opp'n) at 8](conceding that the administrative exhaustion requirement was satisfied). Accordingly, Mr. Williams's motion is properly before the Court. However, the Court DENIES Mr. Williams's motion on the merits.

II. Whether Defendant establishes "extraordinary and compelling" reasons to modify his sentence

The Court begins with the general premise that individuals held in jails and prisons are more likely than the general public to contract COVID-19. At present, the BOP reports that over 18,200 inmates have recovered from the virus and just over 3,500 remain positive nationwide. *See* Fed. Bureau of Prisons, *BOP COVID-19 Cases* (Table), https://www.bop.gov/coronavirus/index.jsp, (last updated 11/19/2020). Without accounting for decreases in the BOP's population, approximately 15% of prisoners in BOP custody have or have had COVID-19. *Id.* By comparison, the Connecticut Department of Public Health has reported nearly 100,000 COVID-19 cases, so with a population of approximately 3.565 million people, about 2.8% of the state's population is or has been infected by coronavirus. Conn. Dep't. of Pub. Health, *Coronavirus Disease 2019 (COVID-19)*, https://portal.ct.gov/coronavirus (last reviewed on 11/19/2020); Conn. Dep't. Pub. Health, *Annual Town and County Population for Connecticut-2018*, https://portal.ct.gov/DPH/Health-Information-Systems--

Reporting/Population/Annual-Town-and-County-Population-for-Connecticut).[1]  The Court is of the view that the increased likelihood of contracting COVID-19 in a custodial setting generally does not itself constitute "extraordinary and compelling reasons" for compassionate release. *See Raia*, 954 F.3d at 597.

This Court and others have declined to find "extraordinary and compelling circumstances" in cases where a defendant has a prior COVID-19 diagnosis. *United States v. Saunders*, No. 3:19-CR-00167 (VLB), 2020 WL 6507389, at *7 (D. Conn. Nov. 5, 2020) ("…[he] has already demonstrated that the COVID-19 virus is not lethal for him, as he successfully weathered a previous infection. Mr. Saunders has also put forward no evidence that he will or is likely to contract the virus again, or if he did that his condition would be worse now than it was when he contracted the virus previously."); *see also United States v. Adams*, No. 10-CR-82 (RJS), 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020)(Sullivan, J sitting by designation)(declining to find that "extraordinary and compelling" reasons exist because the long-term adverse effects of the virus on the offender were speculative); *United States v. Santiago*, No. 92-CR-563 (BMC), 2020 WL 4926470, at *2 (E.D.N.Y. Aug. 21, 2020)("I do not believe that a positive COVID-19 test, even in an individual with risk factors for severe complications or death, constitutes an extraordinary and compelling circumstance in and of itself."); *United States v. Gil-Grande*, No. 3:16-CR-19 (VAB), 2020 WL 5868339, at *4 (D. Conn. Oct. 2, 2020)(surveying cases).

---

[1] The Court recognizes that these statistics are imperfect as reporting methodologies among different government agencies vary. They are cited for illustrative purposes.

The Court agrees with the Government that Mr. Williams's COVID diagnosis does not moot his motion for compassionate release. See [Dkt. 437 at 4]. Indeed, it is conceivable that an offender could experience serious complications from the virus that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," and thus could support a motion brought by the Director of the BOP. U.S.S.G. § 1B1.13, Commentary Application Note 1(A). These conditions, or a medically recognized threat of imminent reinfection, are not present here. Rather, the medical records reflect that the virus is not lethal for him, as he successfully weathered a previous infection without the need for hospitalization and without any apparent lasting effects.

Mr. Williams has also put forward no evidence that he will or is likely to contract the virus again, or if he did that his condition would be worse now than it was when he contracted the virus previously. Mr. Williams tested negative for the virus less than a week after his diagnosis and again thereafter. The radiologist's report for his chest x-ray does not recommend any follow-up treatment and Defendant does not explain how the radiologist's findings are indicative of any long-term medical condition or complication that will substantially affect his quality of life. The records show that medical staff continues to closely monitor Mr. Williams's health. Nor has Defendant explained how modification of his conditions of confinement through the imposition of public health measures necessary for his safety uniquely and adversely affect him to such a degree to constitute "compelling reasons for his release."

**Even if the Court were to conclude that Mr. Williams carried his burden of establishing "extraordinary and compelling" reasons for release, consideration of the 18 U.S.C. § 3553(a) sentencing factors would militate against modification of his sentence.**

**§ 3553(a) sentencing factors**

Because the Court concludes that Mr. Williams did not carry his burden of establishing "extraordinary and compelling" reasons to modify his sentence, the Court will only briefly discuss why the § 3553(a) sentencing factors further militate against granting Mr. Williams motion for compassionate release.

The Court's view of the § 3553(a) sentencing factors remains unchanged since Mr. Williams's initial sentencing in May 2013. Mr. Williams avers that he has engaged in programmatic and employment opportunities while in custody and has taken steps to prepare himself to re-enter society. His release plan proposes that he reside with his mother in Florida or with his son in South Carolina, and in either case, he could maintain employment with his son's painting company. [Dkt. 434 (Williams Release Plan)]. Apart from the limited information available to the Court concerning the suitability of these proposed placements, the feasibility of Mr. Williams's plan is diminished by the fact that he is subject to an ICE detainer and deportation proceedings are likely to commence shortly before or upon his release from federal custody.

The Court must consider not only the person that Mr. Williams professes to be but must also weight the gravity of his offense. As the Court has stated in the past,

**Mr. Williams's conduct was pernicious and without explanation. He exploited the weakness of others for personal profit, for which he lacked remorse. Mr. Williams has over two years and two months remaining to serve on his already-reduced sentence. A further reduction of his sentence would not provide just punishment for his offense.**

## Conclusion

For the above stated reasons, the Court DENIES Mr. Williams's motion for a reduction of his sentence to provide for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

                                                IT IS SO ORDERED.

                                                _____/s/_____
                                                Hon. Vanessa L. Bryant
                                                United States District Judge

**Dated this day in Hartford, Connecticut: November 20, 2020**